## Hershey *versus* Weiting.

*Equity.*—*Rescission of contracts that are void by the Statute of Frauds.*

A court of equity will not rescind an executed contract made to hinder and delay creditors, and void by the Statute of Frauds, on the application of one of the parties to the fraud.

ERROR to the Common Pleas of *Dauphin county.*

This was a proceeding on the equity side of the court, founded on a bill filed by Elizabeth Hershey against Archibald Weiting, August 14th 1860.

The bill set forth that she was a widow, and mother-in-law of the defendant, sixty-seven years old, of feeble bodily health, im perfectly acquainted with the English language, and unable to write or read manuscript; that by reason of becoming surety for her grandson, Isaac L. Shank, she became liable to pay a large sum of money, almost equal to the whole of her estate. That her liabilities on this account came upon her so suddenly and un expectedly that she was troubled, not knowing the extent or amount for which she was liable, or how best to meet it. That whilst thus distressed, her said son-in-law, the defendant, offered his advice and assistance to relieve her of her said trouble. That he represented to her that her liabilities and endorsements, being bank debts, could and would be immediately prosecuted to final judgment; that no stay or time for payment could be obtained; that the same would be sold by the sheriff for such inadequate sums as to be wholly insufficient to pay her said liabilities; that she would thereby become impoverished, and a pauper; and that if she would transfer and assign her property and estate to him, he would so manage the same that she would be fully relieved and protected in the premises. That she at first refused, but that he urged it upon her as the only means by which she could fully pro tect herself and her creditors. That she was also advised by others of her neighbours and friends to assign her property to the said defendant, who she believes were influenced and instigated thereto by his procurement. That on or about the 25th November 1859, he induced her to come to his residence in the night time; that he had then and there certain writings for her to sign and execute, the purport, tenor, or effect of which she did not know or understand, nor were they read or explained to her. That she then believed they were such powers and assignments as would enable defendant to manage her property for the benefit of her self and creditors. That she did not intend to make any sale, conveyance, or transfer of any of her property with intent to defraud, hinder, delay, or embarrass any of her creditors, but that she always intended, and still intends, to the extent of her

[Hershey v. Weiting.]

estate, to pay all her debts, in whatever way contracted. That she has since discovered, as nearly as she can ascertain, that the said writings which said defendant caused her to sign, are the following, to wit: A judgment-bond, dated November 29th 1859, to said defendant, in the penal sum of $2746.22, conditioned for the payment of $1173.11, January 1st 1860, with interest, with warrant of attorney to confess judgment annexed, and which defendant caused to be entered in Dauphin Common Pleas, to No. 166, January Term 1860; a letter of attorney to James W. Weir, Esq., authorizing him to transfer, on the books of the Harrisburg Bank, all her stock in said bank to said defendant—in pursuance of which defendant procured the transfer to him of all her stock in said bank, to wit, forty-four shares; that the said stock was of the par value of $25 per share, and of the marketable value of $33 per share, together amounting to the sum of $1472; a release of her dower as widow of Jacob Hershey, deceased, charged on certain lands owned and in possession of the said defendant, in right of his wife, of the yearly value of $237.07, of which release she was only conscious by subsequent information from the defendant, and by his refusal to pay her any portion thereof, and claiming the same as his own property and estate.

That she did not then, or ever, intend to make any sale, release, transfer, or conveyance of any of her property to the said defendant, but that she intended, and still intends, that all her property should go to the payment of her just debts; that she was not at the time of the making of the said writings, to wit, of the said release, letter of attorney, and bond, or at any time since, in any way or manner whatever indebted to the said defendant, nor did she receive from him any money, goods, property, or other consideration whatever for the same; but that they were entirely without any consideration, other than, as she believed, to make provision for the payment of her debts, and securing to her such balance, or surplus, of said property as might remain after the payment of the same.

That she believes the said defendant advised and procured her to give him the said writings with design and intent to hinder, delay, and defraud her creditors and herself—knowing that she was then largely indebted—and that he, in fraud of her and her creditors, now claims to hold the said judgment as a debt against her, and to hold the said bank stock and dower as his own property and estate, and refuses to apply the same, or any part thereof, to the payment of her debts, or to her benefit in any way whatever; and praying that defendant may be required to answer the premises, and that it may be ordered, adjudged, and decreed, that said writings were wholly without consideration, and were obtained by misrepresentation, contrivance, artifice, and fraud, and are insufficient to transfer, convey, surrender, or encumber in any

14 Wr.—16

[Hershey *v.* Weiting.]

manner whatever, the estate of the said Elizabeth Hershey, and should be from henceforth null and void, and of none effect in the law; and that said defendant be ordered and decreed to enter satisfaction upon said judgment, No. 166, January Term 1860; and deliver up and surrender said release of dower, to be cancelled and destroyed; and re-transfer to her the said forty-four shares of the capital stock of the Harrisburg Bank; and such other and further relief in the premises as the nature and circumstances of the case may require, &c.

The answer denied all fraudulent acts charged, and averred a valid indebtedness on the part of the complainant to the respondent's wife, beyond the amoui of the property transferred.

The case was referred to ; n H. Briggs as master, who, in an elaborate report on the fa' of the case as testified to by the witnesses examined before him, and the law arising out of the facts, decided that they presented a case of what is called a constructive fraud, springing from the confidential relations existing between the parties; and that those several instruments of writing, more particularly described and defined in the bill filed in this cause, were utterly null and void, and should be delivered up and cancelled, as having been executed and delivered to the said Archibald Weiting without any consideration to sustain them.

To this report exceptions were filed. On hearing in the court below the bill was dismissed at the costs of the complainant, but without allowing the costs of respondent; which was the error assigned.

*R. A. Lamberton* and *B. F. Etter*, for plaintiff in error.—By the report of the master, as well as from the opinion of the court below, it is abundantly manifest that a gross fraud was perpetrated and advantage taken by a shrewd son-in-law of an aged mother-in-law. Notwithstanding these facts, which induced the master to declare the papers executed by Mrs. Hershey null and void, the court, with indignation reprobating the whole transaction as a piece of chicanery on the part of Mr. Weiting, " by which this aged lady has been swindled and defrauded out of her worldly substance," dismissed the bill of the complainant, and this for the reason that a " court of equity, having ample ground presented to it for rescinding an executed contract on account of fraud and abuse of confidence, cannot do so, when satisfied from the whole case that the object of the writings was to hinder and delay creditors in the collection of their just debts."

A court of equity looks with extreme jealousy on transactions between parties who stand in any fiduciary relations, or relations of a similar character, by which an undue influence may be obtained by one over the other, and unless he who receives the benefit can show that it was conferred understandingly and with

[Hershey v. Weiting.]

full knowledge of the circumstances, and apart from the bias of that connection, will set them aside: Adams's Equity 412, note; Leisenring v. Black, 5 Watts 303; Greenfield's Estate, 2 Harris 504; Stockton v. Ford, 11 Howard 232; Poillon v. Martin, 1 Sandf. Ch. 569; Merritt v. Lambert, 10 Paige 357; Slocum v. Marshall, 2 Wash. C. C. 397; Taylor v. Taylor, 8 Howard 183; Jenkins v. Pye, 12 Peters 249; Bostwick v. Atkins, 3 Comst. 53; Johnson v. Johnson, 5 Ald. 90; Williams v. Powell, 1 Ired. Eq. 460; Billage v. Southee, 9 Hare 534; Ahearne v. Hogan, 1 Drury 310; Whitehorn v. Hines, 1 Munf. 569; Cooke v. Lamotte, 15 Beav. 334; Espey v. Lake, 16 Jur. 1106; Sears v. Shafer, 2 Leed 268. The court below was therefore warranted in declaring that "this doctrine we would apply to the transactions between a middle-aged, active, and energetic son-in-law and an aged, feeble, and distressed mother-in-law, who looked to him for honest counsel and advice in her almost overwhelming trouble."

Was the learned judge then right in saying "the court will not lend its aid to assist either party"? We respectfully submit that the court below erred in the application of the maxim *in pari delicto* to the facts established in this case: Rider v. Kidder, 10 Ves. 366; Story's Eq. Juris., § 298; Smith v. Brimley, Doug. 696, Cowp. 790; Osborne v. Williams, 18 Ves. 379; Story's Eq. Juris., § 300; Chesterfield v. Jannsenn, 2 Ves. 156.

But this whole case has been made to hinge upon the statute of 13 Eliz., passed for the protection of creditors, and not of those who, by subtlety, deceit, and undue influence and advice, defraud the trusting and confiding. The statute did not give any greater validity or binding force to such conveyances, as between the parties themselves, than they possessed before: Sherk v. Endress, 3 W. & S. 256. It does not operate in a contest between the actors themselves, on what it declares to be fraud only in its relation to third persons, for in any other aspect there is no fraud whatever, and it is unimportant whether the contract is used to found a claim betwixt the parties to it, or to rebut one; it is free from taint in regard to them, and the one may use it against the other for any purpose whatever. The appellant, if there were no creditors to be paid, could, without any consideration, have presented to her son-in-law all her earthly possessions, but when the gift has been procured by an abuse of a confidential relation equity interposes, and this whether or not creditors exist or complain. To hold otherwise would be to offer a premium to craft and guile. We respectfully submit—

1. That a court of equity has full power to order a cancellation of the transfer of bank stock, of the judgment and the release of dower, although they may be viewed as executed contracts.

2. That the statute of 13 Eliz. does not preclude the active interference of equity to rescue the property of the appellant from

[Hershey *v.* Weiting.]

the grasp of one who stood in a confidential relation to her, and so obtained it by undue influence and control.

3. That even if the statute could apply, these parties did not stand *in pari delicto*, and equity will give relief.

*Kunkel & Simonton*, for defendant in error.

The opinion of the court was delivered, October 16th 1865, by

Woodward, C. J.—This bill was filed to obtain the cancellation of agreements and other papers that were made to delay, hinder, and defraud creditors, but the cancellation is asked for by no creditor and only by one of the parties to the papers. The argument is that they should be cancelled at the suit of the plaintiff, because she was betrayed into the making of them by the artifice and fraud of the defendant.

The statute of 13 Elizabeth avoids such papers only for the benefit of creditors, and has no application to the rights of the parties as between themselves. An agreement void by the statute, as to creditors, is to be administered, as between the parties themselves, like any other agreement, and therefore may be impeached for actual fraud: Buehler *v.* Gloninger, 2 Watts 226; Sherk *v.* Endress, 3 W. & S. 255. If the question here were upon *enforcing* the agreements, there can be no doubt that Mrs. Hershey might avail herself of the fraud she complains of, provided always she could establish it to the satisfaction of a jury; but between *enforcing* and *cancelling* an agreement there is a distinction as palpable as that between an *executory* and an *executed* contract. And the ground upon which courts of equity proceed in rescinding or cancelling executed contracts is much more narrow than that upon which they refuse specific performance of an executory contract, or even decree its cancellation. Still, actual fraud *is* a ground of cancellation in equity: Graham *v.* Pancoast, 6 Casey 99, and Nace *v.* Boyer, Id. 99. If satisfactorily made out, why may it not be applied to a contract which creditors might avoid under the statute 13 Elizabeth?

Who comes into equity must come with clean hands. *In pari delicto, melior est conditio defendentis.* These are the principles which stand in the plaintiff's way. You come to ask for the cancellation of an agreement which you intended should delay and hinder creditors, and thus violate the statute law of the land, and therefore you cannot be heard in equity. Who does iniquity shall not have equity. If we could entertain your suit, the fraud practised upon you might be redressed; but equity has no relief for a party who, in the practice of one fraud, has become the victim of another. The old cases often gave relief, both at law and equity, where a party to a fraudulent contract would otherwise derive an advantage from his iniquity; but the modern doctrine has adopted

[Hershey v. Weiting.]

a more severely just and probably politic and moral rule, which is, to leave the parties where it finds them, giving no relief and no countenance to contracts made in violation of statutes. See note to 1 Story's Equity 295, and the cases there cited. I refer also to Evans v. Dravo, 12 Harris, and Shuman v. Shuman, 3 Casey 95.

Equity will relieve at the suit of a *particeps criminis* where the *public* interest requires it, for the relief in such cases is given to the public through the party: St. John v. St. John, 11 Ves. 535; Roberts v. Roberts, 3 P. W. 66; Worcester v. Easton, 11 Mass. Rep. 376.

But in this case, we hear of no creditors: though there were creditors to be defrauded when the papers were made, there are none to be benefited by the cancellation. It is obviously our duty te shape our judgment so as to discourage future contracts violative of the statute of Elizabeth; and we do so when we leave the parties as we find them, without helping either out of the predicament they have got into. We cannot sanction a constructive fraud even for the purpose of punishing an actual fraud.

It is the policy of every civilized people to protect creditors from covinous agreements and assignments of debtors, and this, not because creditors are a peculiarly meritorious class, but because credit and confidence are indispensable to the advancement, if not the very existence, of society; and the growth of these will always be proportioned to the vigilance with which the laws guard the obligations of good faith. The statutes which are founded upon this policy will be made most effective by shutting the door of equity against all who violate their provisions.

These observations are enough, perhaps more than enough, to add to the sound views advanced by the learned judge in dismissing the plaintiff's bill.

The decree is affirmed.