## Reynolds, Appellant, *v.* Boland.

*Equity—Contract—Specific performance—Clean hands.*

If a contract has been entered into by fraud or to accomplish any fraudulent purpose, a court of equity will not, at the suit of one of the fraudulent parties, a particeps doli, while the agreement is still executory, either compel its execution or decree its cancellation, nor after it has been executed set it aside, and thus restore the plaintiff to the interests which he has fraudulently transferred. Equity will leave such parties in exactly the same position in which they have placed themselves, refusing all affirmative aid to either of the fraudulent participants. The only equitable remedies which they can obtain are purely defensive. Upon the same principle, whenever one party, in pursuance of a prior arrangement has fraudulently obtained property for the benefit of another, equity will not aid the fraudulent beneficiary by compelling a conveyance or transfer to him ; and, generally, where two or more have entered into a fraudulent scheme for the purpose of obtaining property in which all are to share, and the scheme has been carried out so that all the results of the fraud are in the hands of one of the parties, a court of equity will not interfere on behalf of the others to aid them in obtaining their share, but will leave the parties in the position where they have placed themselves.

Who comes into equity must come with clean hands.

Who does iniquity shall not have equity.

Equity has no relief for a party who in the practice of one fraud has become the victim of another.

In pari delicto melior est conditio defendentis.

Where two persons enter into a contract the purpose of which is to deceive a third, equity will not compel its specific performance.

Where one of several parties who are about to organize a corporation assigns all his interest in the proposed corporation to another of the parties, and the assignee executes an agreement in writing by which he covenants to reassign to the assignor the stock that may be issued on account of such interest, the agreement to reassign will not be specifically enforced by a court of equity, where it appears that the sole purpose of the transaction was to deceive a third party who would not have gone into the enterprise if he had known of the agreement to reassign, and without whose co-operation the corporation could not have been organized.

Argued Feb. 25, 1902. Appeal, No. 24, Jan. T., 1902, by plaintiff, from decree of C. P. Lackawanna Co., dismissing bill in equity in case of H. B. Reynolds v. William P. Boland, C. G. Boland, John A. Mears and the Peoples Coal Company. Before McCollum, C. J., Mitchell, Dean, Brown and Mestrezat, JJ. Affirmed.

Bill in equity for specific performance.
The facts are stated in the opinion of the **Supreme Court.**
The court entered a decree dismissing the bill.

*Error assigned* was decree of the court.

*Everett Warren,* of *Willard, Warren & Knapp,* for appellant.— The maxim, " He who comes into equity must do so with clean hands," has no application to the facts of this case : Lewis & Nelson's Appeal, 67 Pa. 153 ; Reed v. Marshall, 90 Pa. 345 ; Hays's Estate, 159 Pa. 381.

*John G. Johnson,* with him *John T. Lenahan, Joseph O'Brien* and *Herman Osthaus,* for appellees.—He who comes into equity must do so with clean hands : Reichart v. Castator, 5 Binney, 109.

A chancellor will not grant a party relief from his own fraud. He who seeks equity must do equity. No man shall be received to allege his own turpitude : Evans v. Dravo, 24 Pa. 62 ; Hershey v. Weiting, 50 Pa. 240 ; Winton v. Freeman, 102 Pa. 366 ; Allebach v. Hunsicker, 132 Pa. 349 ; Brown v. Pitcairn, 148 Pa. 387 ; Foll's Appeal, 91 Pa. 434 ; Montefiori v. Montefiori, 1 Wm. Blackstone, 363 ; Roberts v. Roberts, 2 Barn. & Ald. 367 ; Palmer v. Harris, 60 Pa. 156 ; Pidding v. How, 8 Simons Ch. 476 ; Flavel v. Harrison, 10 Hare's Ch. 467 ; McNair v. Cleave, 10 Phila. 155.

Opinion by Mr. Justice Brown, May 19, 1902 :
We glean the following from the facts found by the court below : In the year 1898, one, S. N. Stetler, secured a number of leases for coal underlying lands situated on the west side of the city of Scranton, and entered into an agreement with certain parties, among whom were the plaintiff, H. B. Reynolds,

and the defendant, William P. Boland, for the formation of a mining corporation, to be known as the People's Coal Company. In pursuance of this agreement a charter was secured, each of the incorporators, either personally or through others, paying his share of the ten per centum of the capital stock of $5,000. On December 10, 1898, Stetler assigned his coal leases to the parties to the agreement in their individual names. Two of the parties to it, George S. Horn and C. G. Boland, withdrew from the enterprise, having lost faith in it, and assigned their interests in the property and the company to H. B. Reynolds and William P. Boland, who wished to continue the undertaking with Stetler, thinking it could be made to succeed. While the negotiations for the assignments by Horn and C. G Boland were pending, it was discovered that Stetler had taken away the leases and was apparently negotiating with some other party or parties, without regard to the interests of the persons who had signed the agreement of December 10. To stop these negotiations, H. B. Reynolds and William P. Boland brought an action of ejectment against him, the subject-matter of the action being property described in some of the Stetler leases. This resulted in an agreement by Reynolds and Boland to discontinue the action of ejectment and to assign all the stock held by them in the People's Coal Company to S. N. Stetler, or to any person or persons to whom he might direct the assignments to be made. This agreement was dated April 4, 1899, and left Stetler in practical control of the association. It appeared, however, that he had no objection to Boland, and they continued on friendly terms, working together for the development and success of the coal property, but he refused in any way to recognize Reynolds as interested in the property and insisted upon his elimination from the enterprise. From the time the ejectment suit was started there was discord between Stetler and Reynolds, and a decided hostility on the part of the former to the latter. This amounted to a determination on Stetler's part to deny Reynolds any interest in the company and to refuse to consummate the transfer of the leases to it, unless Reynolds got out and severed all connection with it, either as a stockholder or as an officer. Reynolds, however, notwithstanding his agreement of April 4, 1899, was anxious to retain an interest in the company, but this could

not be done on account of Stetler's hostility to him. On June 3, 1899, Reynolds and William P. Boland met and made an arrangement by which an interest for Reynolds was to be protected and Stetler deceived. To accomplish the protection of this interest and the deception of Stetler, Reynolds assigned to W. P. Boland all his right, title and interest in and to the People's Coal Company and the stock to be issued to him by said company. At the same time Boland executed and delivered the following paper to Reynolds : "Now, June 3, 1899, H. B. Reynolds, having this day transferred to me all his right, title and interest in and to the People's Coal Company and the coal leases covered by agreement of 10th of December, A. D. 1898, between S. N. Stetler and others, this is to certify that said transfer was made to me for the purpose only of temporarily satisfying S. N. Stetler, who, for some reason, does not entertain kindly feelings towards the said Reynolds, and for the purpose of harmonizing all differences existing between said S. N. Stetler and others interested, and I hereby agree that so soon as the organization of the People's Coal Company is completed and certificates of stock for the interest of said Reynolds in said coal company is issued to me, to reassign and reinstate said Reynolds in his present interest as fully and as completely as if his assignment to me this day had not been made. Witness my hand and seal the day and year first above written. W. P. Boland. [Seal.]"

On June 5, two days following, Reynolds sent the following communication to the president of the coal company : "To the President, People's Coal Company : I hereby tender my resignation as secretary and director of the People's Coal Co., the same to take effect forthwith. Yours truly, H. B. Reynolds."

The learned court finds that the one fact about which the witnesses who testified substantially agreed was, that the assignment by Reynolds to Boland, on June 3, 1899, was made to circumvent the hostility of Stetler to Reynolds ; but, from the following extracts from the testimony of the plaintiff and one of his witnesses, the purpose was not only to circumvent Stetler, but to deceive him : "Q. Look at this paper—that was drawn up by you, was it not? (Paper shown witness.) A. Yes, sir. Q. And drawn up with the design of fooling Mr. Stetler, wasn't it? A. I suppose that is the sense of it.

Q. Wasn't it stated in Mr. Breck's presence, as he stated here this morning, that that is what it was done for? A. Yes, sir. Q. To pretend that it was an honest bona fide transfer of this stock from you to Boland? A. Yes, sir. Q. Because Stetler had refused to go on with this deal as long as you were in it? A. I couldn't have any negotiations with him; he wouldn't have anything to do with me. Q. This paper was drawn for the purpose of fooling Stetler because he wouldn't go on with the deal as long as you were in it? A. Yes, sir." Again, Reynolds, in his examination in chief, says: " Will then came to my office and told me the condition of affairs—that Stetler not only charged me with tying him up in the original agreement, but also charged me with being the instigator of the ejectment suit, and he was so wrought up over the matter and so angry at me that it was difficult and, in fact, impossible for him to proceed further while I was in the company, but that if I would assign my interest to him he would reinstate me in the company in exactly the same position I then occupied, and I should have my full interest. I said: ' Will, I will do it; I will make the assignment,' and I did that on June 3." Mr. Breck, plaintiff's witness, also testifies: " Mr. Boland and Mr. Reynolds, in accordance with their general conversation which I was at times a party to, spoke of their interest in this coal property, and it seems that Mr. Stetler was mixed up in the affair, and for some reason Mr. Stetler had a great deal of animosity against Mr. Reynolds, and in order that matters should be facilitated and things should move smoothly on, it was agreed that Mr. H. B. Reynolds should apparently drop out of the concern, alleging that he had nothing to do with it. He was at that time the secretary of the company." On cross-examination the witness further testifies: " Q. Under your statement here, these papers were to be drawn up for the purpose of deceiving Stetler? A. Yes, sir. Q. These papers were drawn up, as I understand you, in pursuance of this arrangement— this talk? A. Yes, sir. Q. And was to embody that agreement that they had? A. Yes, sir. Q. Now, give us what was said at that time? A. I can't give you exactly what was said. Q. Give us substantially. A. It was simply said that no arrangement could be made with Stetler. William said he couldn't do anything with him unless Harry stepped down and

out, and it was pursuant to that talk that these papers were fixed up.   Q. These papers embodied substantially that agreement?   A. Yes, sir."

Boland, to whom 310 shares of the capital stock of the company were issued, refused to assign to Reynolds the number of shares to which the latter claimed he was entitled, and this bill was filed to compel his specific performance of his agreement of June 3, 1899.

It is true, C. G. Boland and John A. Mears, who, with William P. Boland, co-operated with Stetler in the organization and operation of the company, are, with it, made parties to the bill, in which allegations are made of a conspiracy on the part of these individuals " to cheat the plaintiff out of his interest in the stock of said company and its property;" but the real relief sought is a decree against W. P. Boland, on his agreement of June 3, 1899, for his specific performance of it by assigning to the plaintiff the shares of the capital stock of the company to which he alleges he is entitled.

It is conceded by counsel for appellant that the facts as found by the court below, so far as they go, are correctly stated; but it is contended that there are other facts of significance, as well as legal conclusions derived therefrom, which must be weighed in order to determine the attitude of the different parties and the nature of their actions relatively considered.   We cannot, however, agree that any fact of significance or importance, voluminous as the testimony is, was overlooked by the learned judge in passing upon the single and simple question, whether plaintiff, on his own admissions, had come into a court of equity with clean hands.   He dismissed the bill because the agreement of June 3, 1899, had been executed to deceive Stetler, and the plaintiff was, therefore, not entitled to consideration by a chancellor.   This is the single question now before us, as is frankly stated by the appellant in his paper-book, and, in determining it, we shall consider only the facts found below, the other features of the case, to which our attention has been called at great length, being at this time of no importance.

Equity springs from conscience and is administered through it.   He who would reach the conscience of a chancellor must come with his own void of offense, for " He that hath committed iniquity shall not have equity:" 1 Pomeroy's Equity Jur. 434–

443; Bisham's Equity, 60–61.    Specific performance is here
prayed for; but it is of grace and not of right: Pennock v.
Freeman, 1 Watts, 409; Henderson v. Hays, 2 Watts, 148;
Orne v. Kittanning Coal Co., 114 Pa. 172; Datz v. Phillips,
26 W. N. C. 512; Brown v. Pitcairn, 148 Pa. 387.    From the
lips of this complainant, who sues for grace, along with his
prayer for a decree that the defendant specifically perform his
agreement, there comes a confession that its purpose was to de-
ceive, and the ear of the chancellor will not hear the prayer.
Into hands soiled by a contract, equity will not place her decree
for its enforcement.    "The doors are shut against one, who,
in his prior conduct in the very subject-matter at issue, has
violated good conscience, good faith or fair dealing:" Orne v.
Kittanning Coal Co., supra.

"If a contract has been entered into through fraud or to ac-
complish any fraudulent purpose, a court of equity will not,
at the suit of one of the fraudulent parties, a particeps doli,
while the agreement is still executory, either compel its ex-
ecution or decree its cancelation, nor, after it has been executed,
set it aside, and thus restore the plaintiff to the interests which
he has fraudulently transferred.    Equity will leave such par-
ties in exactly the same position in which they have placed
themselves, refusing all affirmative aid to either of the fraudu-
lent participants.    The only equitable remedies which they
can obtain are purely defensive.    Upon the same principle,
whenever one party, in pursuance of a prior arrangement, has
fraudulently obtained property for the benefit of another,
equity will not aid the fraudulent beneficiary by compelling a
conveyance or transfer to him; and, generally, where two or
more have entered into a fraudulent scheme for the purpose of
obtaining property in which all are to share, and the scheme
has been carried out so that all the results of the fraud are in
the hands of one of the parties, a court of equity will not inter-
fere on behalf of the others to aid them in obtaining their share,
but will leave the parties in the position where they have placed
themselves:" 1 Pomeroy, section 401.    "While a court of
equity may act upon the conscience of a defendant and force
him to do right and justice, it will never thus interfere on be-
half of a plaintiff whose own conduct in connection with the
same matter or transaction had been unconscientious or unjust

or marked by a want of good faith or had violated any of the principles of equity and righteous dealing, which it is the purpose of the jurisdiction to sustain. It endeavors to promote and enforce justice, good faith, uprightness, fairness, and conscientiousness on the part of those who occupy a defensive position in judicial controversies; but it no less stringently demands the same from the litigant parties who come before it as plaintiffs or actors in such controversy. This fundamental principle is expressed in the maxim, ' He who comes into a court of equity must come with clean hands : ' " 1 Pomeroy, sections 398, 399.

It is not pretended that, in the agreement of June 3, 1899, Reynolds and Boland tried to take advantage of each other, or that either was attempting any fraud upon the other. Its sole purpose was the deception of Stetler, to enable Reynolds to accomplish through it what was apparently impossible without it. But this does not relieve it from its baseness, and in it there is no equity for the plaintiff. As early as April 4, 1899, he and W. P. Boland, by the express terms of the settlement of the action of ejectment which they had brought against Stetler, agreed to assign all the stock held by them in the People's Coal Company to S. N. Stetler, or to any person or persons or company to whom he might direct the assignments to be made. At that time Stetler believed, as he had reason, that Reynolds was out of the enterprise, and he then went on with it, retaining the co-operation of W. P. Boland, who, in the distribution of the capital stock of the company, received 310 shares. His confidence in Boland was misplaced, for all the time the latter was in sympathy with Reynolds; and, on June 3, 1899, in violation of the good faith which he owed to Stetler, and which Reynolds knew he was violating, a contract was entered into, by the terms of which, if specifically enforced, Reynolds can thrust himself into business companionship with Stetler, and, by subterfuge and a trick, accomplish what would have been impossible in open and fair dealing. Though the People's Coal Company would not have been organized and successfully managed if Reynolds had not agreed to withdraw from it by assigning whatever interest he had in it to Stetler, or to any one whom the latter might name, in violation of his agreement of April 4, he made another, by the terms of which he

seeks to impose upon Stetler, and through it to accomplish his personal ends. Stetler is to be wronged. The compact of June 3, 1899, was for that purpose. It is still executory, and equity frowns at the mere suggestion of its enforcement. Both parties to it are parties to its iniquity, and neither has any equity against the other. "Who comes into equity must come with clean hands. In pari delicto melior est conditio defendentis. These are the principles which stand in the plaintiff's way. . . . Who does iniquity shall not have equity; equity has no relief for a party who, in the practice of one fraud, has become the victim of another:" Hershey v. Weiting, 50 Pa. 240.

Whatever rights at law Reynolds may have under the agreement of June 3, 1899, we do not pass upon. We simply decide that the relief which he craves in equity must be denied him. The question now is, not what Boland ought to pay him on the agreement of June 3, 1899, as an executed contract between them, but whether, as an executory one, its terms can be enforced specifically, with the effect of consummating the deception intended by it when entered into and of perpetrating by fraud the imposition upon Stetler. No other view could have been entertained by the court below than that the bill must be dismissed, and the decree dismissing it is now affirmed at appellant's costs, without prejudice to any rights he may have at law.