## The Maccabees v. Kieserman et al.

*Grover C. Ladner,* for plaintiff; *C. Brewster Rhoads,* for defendants.

DAVIS, J., May 5, 1931.—The plaintiff averred that it is a fraternal benefit society incorporated under the laws of the State of Michigan; that on February 1, 1930, the defendant, Bessie Kieserman, made application to the plaintiff for membership and the issuance to her of a $5000 death benefit certificate; that on the 1st day of March, 1930, on the faith of the written application signed by the applicant, the defendant here, she was admitted to membership and a death benefit certificate issued; that in the said application the defendant made the following warranty in answer to question twenty-nine, addressed to the applicant: "Q. Have you ever applied for insurance or reinstatement in any society or company and been rejected, action postponed or limited to a certificate or policy different from the kind you applied for? A. No."

The applicant further agreed that all answers to the questions in said application were true and were to be construed as warranties. The plaintiff further averred that it subsequently discovered that the answer so warranted to question twenty-nine was false and untrue; that defendant had applied for insurance in at least two other insurance companies and her application rejected, that she then made application to a third insurance company and a limited policy or certificate issued; that on November 29, 1929, the said Bessie Keiserman applied for a $1000 policy of life insurance to the Continental Casualty Assurance Company, a medical examination was made and the application for insurance declined and the policy refused; that during

the latter part of November or early part of December, 1929, defendant made application to the United States Life Insurance Company, with principal offices at 156 Fifth Avenue, New York City, for insurance, and after medical examination reported to said company on December 5, 1929, that defendant's application was rejected; that during the month of December, 1929, the defendant made application to the Peoria Life Insurance Company, of Peoria, Illinois, for an ordinary life insurance policy of $2500, which application the said Peoria Life Insurance Company rejected and refused to issue a life insurance policy. The plaintiff further averred that it first discovered the falsity of the representations made by the defendant on or about March 22, 1930, and that on March 29, 1930, upon verification of the falsity of the answers warranted by the defendant, the defendant was notified by the plaintiff of its election to rescind the benefit certificate issued to the defendant, and tendered a return of the premiums theretofore paid on said policy to the defendant. The defendant refused to accept the same and refused to surrender the benefit certificate.

The plaintiff prays for a decree canceling the benefit certificate issued on the basis of the application and containing the false statement as hereinbefore set forth, and for a decree against the defendant, commanding and requiring her to deliver up for cancellation the said benefit certificate in her possession.

The defendant in her answer admitted the first, second and third averments of plaintiff's bill. As to the fourth averment, the defendant denied that in her application she had warranted the answer to question twenty-nine, referred to in plaintiff's bill. She admitted, however, that all answers made upon her application were warranted by her as true. The defendant further averred that she was an aged woman and unable to either read or write English, except her name; that at the time of making said application she gave true and correct answers to the questions asked her by one James A. Silber, the then duly authorized agent of the plaintiff society, and that she was induced by Silber to execute the application in blank; that the answers as appearing in said application were filled in without the knowledge or consent of the defendant; that the defendant did not know the answers were inserted in said application until advised to that effect in September, 1930. The defendant further answered that she had been refused policies by other companies as set forth in paragraph five of plaintiff's bill, all of which information was communicated by her to plaintiff's agent, Silber, at the time of making her application to the plaintiff society. The sixth, seventh and eighth paragraphs of the plaintiff's bill were admitted. She denied paragraph nine of plaintiff's bill. She further denied that she had refused to accept the tender of the premiums paid on the said policy.

### Findings of fact.

The court makes the following findings of fact:

1. The plaintiff is a bona fide fraternal benefit society incorporated under the laws of the State of Michigan and authorized to do business in Pennsylvania.

2. On February 1, 1930, the defendant, Bessie Kieserman, of the City of Philadelphia, made application to the plaintiff for membership and issuance to her of a $5000 death benefit certificate, said application being made in writing. The other defendants, Joseph, Benjamin and Philip Kieserman, were named therein as beneficiaries.

3. Subsequently, on the first day of March, 1930, on the faith of the written application as aforesaid (exhibit "A" of the bill), the defendant, Bessie

Kieserman, was admitted to membership and there was issued to her a death benefit certificate, a copy of which is annexed to the bill and marked exhibit "B."

4. The benefit certificate was issued upon the faith of the written application signed by the insured, Bessie Kieserman, in which she warranted, inter alia, as follows: "29. Q. Have you ever applied for insurance or reinstatement in any society or company and been rejected, action postponed or limited to a certificate or policy different from the kind you applied for? A. No."

5. The application contains the following agreement signed by Bessie Kieserman, by which she must be regarded as bound:

"I hereby agree and warrant, that the above as written are true answers to the questions, and that any untrue answers, or suppression of facts shall vitiate my benefit certificate. I agree that no officer or representative of the Association has any authority to waive, either by writing, practice or otherwise, a strict compliance with its laws. This application shall not be binding on the Association until approved by the Medical Director nor shall I be entitled to participate in the benefit fund of the Association until I have paid my advance monthly rate. My acceptance of any certificate issued on this application will constitute a ratification by me of any restrictions, corrections, changes or additions to this application made by the Association."

6. The answer to question twenty-nine of the application was false in that, on November 29, 1929, the applicant had applied to the Continental Casualty Assurance Company for a $1000 policy, and about the same time, November or December, 1929, had applied to the United States Life Insurance Company for insurance, both of which applications were, after medical examination, rejected. Also, in December, 1929, she made application to the Peoria Life Insurance Company for an ordinary life policy of $2500, which was also refused, and a policy providing merely for return of premiums in case of death which that company issued, the said applicant (Bessie Kieserman) refused to accept and returned.

7. The defendant, Bessie Kieserman, is a shrewd business woman engaged in money loan business, who has made frequent applications for insurance to many companies and admitted she was familiar with the fact that all insurance companies request information relating to action by other companies on previous applications of insurance.

8. There was no misrepresentation or fraud on the part of the plaintiff or any of its agents.

9. The beneficiaries claim no interest whatsoever in the benefit certificate in question.

10. The defendant was tendered the full amount of premium which she paid for the benefit certificate requested to be canceled, viz., $318.25, but she refused to accept the same.

11. After such refusal the plaintiff brought this bill for cancellation.

12. Out of the premium received the plaintiff paid the agent a commission for the same and does not now have the full amount of the premium. Moreover, a full year has passed since premium was paid and plaintiff has suffered damages to the amount of a reasonable counsel fee in bringing this action to cancel the benefit certificate.

### Discussion.

The defendant seeks to avoid the consequences of the application by averring in her answer that she was unable to read and write, that she was an aged woman and that she signed the application in blank at the instance of

plaintiff's agent. The testimony of the defendant upon hearing before the chancellor does not sustain these averments. Her physical appearance and mental attitude gave no indication of the infirmities of age. She was a woman of keen intellect, actively engaged in the business of investigator for a finance company; in fact, the corporation was known as the Bess-Kay Company, being a combination of defendant's Christian name and surname. This company is engaged in the business of lending money, and the defendant carries on certain investigations before a loan is made in order to determine the responsibility of the borrower. She has been in this country for thirty-five years and is now fifty-eight years of age. Her testimony at the hearing was contradictory of the averments set forth in the sworn answer. In her answer she averred that she signed the application in blank for one James Silber, an alleged agent of the plaintiff, and that the said James Silber induced her to sign the application. At the time of the hearing she testified that she signed the application at the request of the doctor who examined her, that he was the only one who asked her to sign it. This testimony was specifically denied by Silber, and Dr. Hanna, who examined the defendant at the time her application was filed, denied that he induced her to sign the application in blank. The defendant admitted that when she made application to other companies she had answered that she had never been rejected by any insurance company and that she knew at the time she made these answers that they were untrue. She admitted that she had applied to other companies when she made the application, stating that she had never been rejected; in knowing she was not telling the truth, she left it to the companies to find out as to the truth or falsity of her statements.

The contradictory testimony of the defendant, her evasion and the admitted falsity of her statements are sufficient to defeat her right to equitable relief. It is one of the elementary and fundamental principles of equity that he who seeks equity must do equity, and another, that he who cometh into equity must come with clean hands. The doors are shut against one who in his prior conduct in the very subject matter at issue has violated good conscience, good faith and fair dealing. Equity refuses to lend its aid in any manner to one seeking its active interposition who has been guilty of unlawful or inequitable conduct in the matter with relation to which relief is sought: Orne *v.* Kittanning Coal Co., 114 Pa. 172; Reynolds *v.* Boland, 202 Pa. 642; Bishoff *v.* Valley Dairy Co., 302 Pa. 125; 21 C. J. 180, § 163.

In American Union Life Ins. Co. *v.* Judge, 191 Pa. 484, it was held:

"Where an applicant for life insurance answers 'No' to the question 'Is any negotiation for other insurance on your life now pending?' and 'No' to a question as to whether any other company had ever declined or postponed acceptance of a proposal to insure his life, the policy is thereby rendered invalid, if it appears that two weeks prior to the signing of the application the insured had made application to another company for insurance, and that this application had been declined, although the declination had not been communicated to the insured."

See, also, Moncur *v.* Western Life Indemnity Co., 269 Pa. 213.

The answer of the defendant in the instant case, that she was unable to read English, even if that were true, does not acquit her of the duty to demand that the paper she signed be first read to her. In Greenfield's Estate, 14 Pa. 489, 496, it was said:

"If a party who can read . . . will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or

explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law."

The defendant here was not ignorant of the requirements incident to an application for insurance. She had made applications to several other companies wherein the questions propounded were identical with those in the application in the instant case, and her testimony was that she had knowingly made false answers to those questions. She was the applicant and had a vital interest in having the policy issued, and was, therefore, under a duty to have the application read to her before signing it. . The plaintiff tendered to the defendant the full premium paid on this policy, and she rejected the offer. The plaintiff has met the requirement of the rule of law that a bill for rescission will not be entertained unless an offer is made to restore to the defendant what the plaintiff has.

The chancellor makes the following

## Conclusions of law.

1. The plaintiff is entitled to the decree prayed for, requiring the benefit certificate in question to be delivered up and canceled, it having been procured by a fraudulent representation known to the defendant, Bessie Kieserman, to be false.

2. The defendant, having deliberately perpetrated a fraud on the plaintiff, is not entitled to recover back the premium paid, but only such sum, if any remaining, after deduction of the expenses and commissions to which the plaintiff has been put by the defendant's fraud and her refusal to accept tender of return of full premiums and cancellation of certificate, in which expenses plaintiff is entitled to include a reasonable counsel fee, which, if the parties cannot agree upon, will be fixed by the court.

3. Plaintiff is entitled to a decree that the defendant beneficiaries have no interest in the certificate.

4. Defendant to pay all costs.

## Final decree.

This cause came on for a hearing on bill, answer and proofs, upon consideration of which, it is ordered and decreed:

1. That the $5000 death benefit certificate issued by The Maccabees on February 1, 1930, certificate No. 1,066,768, be and the same is hereby declared null and void, and that Bessie Kieserman, the insured and holder thereof, be required to forthwith deliver up the same to the plaintiff or its attorneys for cancellation.

2. That the defendants, Joseph Kieserman, Benjamin Kieserman and Philip Kieserman, beneficiaries named therein, are hereby declared to have no further interest therein and no right to recover thereon in case of the death of said Bessie Kieserman.

3. It appearing to the court that the commission paid to the agent securing the application, together with the doctor's examination fee, exceeds the first premium paid, it is hereby decreed that the plaintiff shall have the right to reimburse itself out of said premium so far as it is able to do so, and that the defendant, Bessie Kieserman, shall have no right to a return of said premium, either in this proceeding or in any other.

4. That the defendant, Bessie Kieserman, shall pay all costs.