202 Inc., Appellant, *v.* Barton Lewis & Co., Inc.

Argued May 6, 1969.    Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Lawrence M. Aglow,* with him *Herbert Braker* and *Louis H. Levitt,* for appellant.

*Norman C. Henss,* with him *Cohen, Shapiro, Berger, Polisher & Cohen,* and *Gawthrop and Greenwood,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, June 27, 1969:

202 Inc. filed a complaint in equity seeking to set aside the assignment of a mortgage by it to appellee, A. Barton Lewis & Co., Inc. [Lewis].[1] The Chancellor's adjudication denied relief and dismissed the complaint. This appeal followed the dismissal of appellant's exceptions and the entry of the decree nisi as the final decree.

The facts, as found by the Chancellor, affirmed by the Court en banc and amply supported by the record, disclose a course of events which, to say the least, would disturb the sense of order of the average businessman. The chronicle begins in late January of 1965, at which time Michael and Coramay Izzi, husband and wife, conveyed a tract of land in West Goshen Township to Michael's brother, John Izzi. The deed recited a consideration of $20,000.00, but, in fact,

---

[1] The other relief sought by appellant has been accomplished and is no longer pertinent to the decision of this appeal.

no consideration passed. The conveyance was apparently made in connection with a plan to develop the land as a shopping center, with John acting as the driving force behind the project. Appellant, 202 Inc., conducted a restaurant and bar business on the property, it being the authorized licensee. At this time, all of the stock of 202 was owned by Michael and Coramay and another brother of Michael, Joseph Izzi.

At the time of the real estate conveyance, the stockholders of 202 turned over to John Izzi certain corporate books and records, including the minute book and stock transfer ledger. Armed with these, John went to an attorney, Kubacki, and convinced Kubacki that he, John, was in control of 202 and that John had been elected president and Kubacki secretary of the corporation. A corporate minute to that effect was prepared by Kubacki and given to John to obtain the signature of Coramay, the previous secretary. The minute was returned to Kubacki with a signature purporting to be Coramay's, but which was not, in fact, her signature.

John then executed mortgages totaling $34,473.45, using the West Goshen real estate as collateral. Debts of Michael and Coramay in the amount of $6,500.00 were satisfied out of the mortgage proceeds and John, apparently, used the rest of the fund for his own purposes. John returned the corporate books to Michael but Michael, unfortunately, did not look at them and returned them to John in the spring of 1966. At about this same time, Joseph sold his interest in 202 to Michael and Coramay.

The mortgagee, at this point, threatened foreclosure and John negotiated a $45,000.00 loan from Lewis. Lewis insisted that John assign and pledge, as additional security, the stock of 202, John having represented that he owned all of the stock. He further

agreed to deliver the books and corporate seal to Lewis and to an arrangement whereby the mortgage would be drawn with 202 as mortgagee and the corporation would immediately assign the mortgage to Lewis. The reason for this arrangement is not clear. Lewis testified that since 202 owned the liquor license, he preferred that arrangement in order to facilitate the transfer of the license to Lewis as additional collateral.

Be that as it may, however, the transaction was closed on July 1, 1966. John executed his bond and mortgage to 202 in the amount of $45,000.00, after which he, as president of 202, and Kubacki, as its secretary, executed and delivered the assignment of the mortgage to Lewis. John endorsed, in blank, certificates purporting to be all the stock of 202 and turned these over to Lewis, together with the corporate books and seal and a declaration of no setoff. The previous mortgage was satisfied and the net proceeds paid to John.

In the early winter of 1967, Liquor Control Board representatives inquired of Michael as to the whereabouts of the corporate books. Michael now began, albeit belatedly, to make inquiries and discovered the existence of the mortgage held by Lewis. Michael and Coramay, on May 1, 1967, took a deed from John, reconveying the real estate to them. Like the earlier deed, a consideration of $20,000.00 is recited although no consideration passed. Upon default, Lewis threatened foreclosure and 202 commenced the instant proceedings.

The Chancellor's succinct discussion clearly describes what would result were appellant to prevail. He said: "The facts thus found clearly demonstrate that if this plaintiff is permitted to prevail, Michael and Coramay Izzi, through their corporation, 202, Inc.,

will have obtained control of the mortgage which encumbers their real estate even though neither they nor their corporation have advanced any money on the strength of it. Indeed, if such a result is decreed, these individuals will have benefited from the transaction to the extent that they have obtained the payment of debts amounting to about $6,500 and have had the liens upon their property representing those debts satisfied of record. Equity should not be allowed to become an instrument for the production of such an unjust result.

"Had Michael and Coramay instituted this action as individual plaintiffs, they would have been denied relief upon the well-recognized principle of equitable estoppel. No valid reason has been advanced to justify the production of a different result merely because they are now acting through their corporation.

"The basic transaction here involves a mortgage created by John Izzi in favor of Lewis & Company. That company has advanced $45,000. on the strength of it. 202, Inc. never knew of the existence of the mortgage. There was no recognition of its existence by the true owners of that corporation. Since such recognition was necessary to the validity of the assignment, there has been no assignment either in fact or in law. If that attempt is null and void, as we decree it must be, then the basic transaction must be allowed to stand as originally contemplated. Certainly Lewis should not be deprived of the security it accepted and upon which it relied in making its loan to John. Any other result would be unjust indeed.

" 'A suitor who seeks a decree which will do him no good but will work a hardship on another is not armed with a cause that will make any appeal to a court of equity. As this Court said in Reynolds v. Boland, 202 Pa. 642, 647, 52 A. 19: "Equity springs

from conscience and is administered through it." The Supreme Court of the United States expressed the same principle in Deweese v. Reinhard, 165 U.S. 386, as follows: "A court of equity acts only when and as conscience commands." '; Bristol-Myers Company v. Lit Brothers, Inc., 336 Pa. 81, 92 (1939). In our view, this plaintiff's claim falls within the class described in the above quotation."

Moreover, it is clear that Michael and Coramay, the controlling owners of 202, placed John in a position from which he could indulge in the machinations outlined. Having done so, it is they who should bear any loss, not Lewis, which, so far as this record discloses, acted in good faith. The Court en banc stated the proposition accurately when it said: "Michael and Coramay transferred the title to the real property in question to John, thereby permitting him to use that property as security for the loan from Lewis. In addition, they delivered all of the corporate books and records of the plaintiff corporation to him so that he was put in a position to convey the impression that he and his lawyer, Kubacki, were acting as officers and agents of the corporation to the extent that the corporation participated in the transaction itself. It was the complete faith in John which Michael and Coramay permitted to be exhibited which produced the unfortunate result of which they now, through their corporation, complain. We cannot permit them to shift the unfortunate consequence of that misplaced faith to one who apparently acted in good faith in making the loan."

Decree affirmed, appellant to bear costs.

Mr. Justice JONES took no part in the consideration or decision of this case.