## Schaeffer, Appellant, *v.* Jones et al.

## Bond et al. *v.* Jones et al.

*Equity — Specific performance — Vendor and vendee—Principal and agent—Fraud—Clean hands.*

1. Equity will not specifically enforce a contract, just or unjust, if unfairly obtained, as such enforcement is a matter of grace and not of right.

2. The doors are shut against one who, in his prior conduct, in the very subject-matter at issue, has violated good conscience, good faith and fair dealing.

3. Where an agent for vendors of real estate has been unfaithful to his principals, and it appears that the infidelity has been brought

about at the instigation and by the encouragement of the vendees, the latter cannot enforce the contract against the vendors.

4. A bill in equity for specific performance will be dismissed where it appears that plaintiff had deliberately sworn falsely to the pleadings filed in the case in a manner calculated to deceive the chancellor and defeat justice, and therefore was not in court with clean hands.

Argued May 10, 1928. Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

Appeals, Nos. 58 and 59, Jan. T., 1928, by plaintiffs, from decree of C. P. Delaware Co., Sept. T., 1925, No. 123, dismissing bill in equity, in cases of Rupert C. Schaeffer v. Richard L. Jones et al. and Richard J. Bond and V. Ervin Bond v. Richard L. Jones et al. Affirmed.

Rule for specific performance of contract for sale. of real estate. Before BIDDLE, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiffs appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Yale L. Schekter,* with him *William C. Alexander* and *Brown & Williams,* for appellants.—It was not fraud or misconduct on the part of the broker to refrain from disclosing to the Joneses the identity of the bonds as purchasers: Werdebach's Est., 280 Pa. 26; Sheriff v. Neal, 6 Watts 534; Neill v. Shamburg, 158 Pa. 263; Fulton v. Walters, 216 Pa. 56.

The Bonds cannot be charged with Loomes's misconduct; for they had no part in it, nor did they know of it: Welsh v. Ford, 282 Pa. 96; Crick v. Paull, 287 Pa. 431; Hamilton v. Fay, 283 Pa. 175; Gilbraith's Est., 270 Pa. 288.

Plaintiff Schaeffer was not guilty of wilful misconduct in his reply or in his testimony: Comstock v. Thompson, 286 Pa. 457.

*Owen J. Roberts,* with him *Lutz, Ervin, Reeser & Fronefield,* for appellees.—The disloyalty of the agent Loomes was not confined to his failure to disclose the name of the prospective purchaser and his deliberate deception in connection therewith but also in his failure to use his best endeavor and skill to promote the interests of defendants as vendors in securing the highest prices possible, rather than attempting to secure from the vendors the lowest possible price for which they were willing to part with the farm: Rich v. Black & Baird, 173 Pa. 92; Pratt v. Patterson, 112 Pa. 475; Wilkinson v. McCullough, 196 Pa. 205; Finch v. Conrade, 154 Pa. 326; Lightcap v. Nicola, 34 Pa. Superior Ct. 189; Shamokin M. Co. v. Ins. Co., 39 Pa. Superior Ct. 553; Everhart v. Searle, 71 Pa. 256; Brown v. Pitcairn, 148 Pa. 387; Siess v. Anderson, 159 Mo. App., 656; Miller v. Fulmer, 25 Pa. Superior Ct. 106.

The principal or policy of law which forbids the agent to work for the benefit of the purchaser while still acting for the seller, is equally effective to forbid the purchaser from entering into any relations with the seller's agent without the knowledge or consent of the seller: Lightcap v. Nicola, 34 Pa. Superior Ct. 189; Rice v. Findlay Co., 19 Pa. Dist. 601; Marshall v. Reed, 32 Pa. Superior Ct. 60.

A party who, by his prior conduct in the very subject matter at issue, has violated good conscience, good faith or fair dealing, is always an unwelcome suitor in a court of equity: Reynolds v. Boland, 202 Pa. 642; Brown v. Pitcairn, 148 Pa. 387.

OPINION BY MR. JUSTICE WALLING, June 30, 1928:

This suit in equity, brought to compel the vendors to specifically perform a contract for sale of land, resulted in a final decree dismissing plaintiff's bill and therefrom he brought this appeal. Intervening plaintiffs also appealed from the same decree. The defendants, Richard L. Jones and others, herein called "the Jones' heirs"

and Richard J. Bond and others, herein called "the
Bonds" were relatives and owners as tenants in common
of a one-hundred-and-four-acre farm, situated on the
State Road in Upper Darby township, near Philadel-
phia, the Jones' heirs owning five-twelfths and the Bonds
seven-twelfths thereof. By reason of suburban develop-
ments, it became of such great value that early in 1925,
the owners considered the advisability of putting the
same upon the market. In furtherance of this, repre-
sentatives of both sides met on April 18, 1925, when
methods of sale, price, etc., were discussed. On behalf
of the defendants, it was suggested that "for sale" cards
be placed upon the premises. This the Bonds objected
to, saying it would cause annoyance by undesirable ap-
plicants. One of the Bond brothers, intervening plain-
tiffs, tried to get the Jones' heirs to set a price per acre
for their interest and in so doing said his sisters would
sell for $3,000 an acre. After consultation, one of the
defendants said they would sell for $5,000 an acre, which
one of the Bonds said was much too high, and nothing
definite was accomplished. Twelve days later, on April
30th, Martha Bond, mother of the intervening plaintiffs
and a part owner of the farm, wrote the defendant,
M. L. Jones, stating, inter alia, "Rich and Erv [her two
sons] came up to try to buy the Bryan farm [the one
in question being so called], and would have bought it
if they could have come to reasonable terms with you
folks that night, after figuring out the cost of develop-
ing Erv decided he did not want to go in on it, and Rich
is now considering another property, practically half
the price he was offering for yours and which he feels
is as good a proposition, therefore he is not interested
in buying from you; for which I am very glad, as I
feel it would be a very big chance for him to take." Five
days thereafter, W. A. Loomes, an experienced realtor,
was introduced to defendants and given verbal authority
to sell their interest in the farm. He met Rupert C.
Schaeffer, the plaintiff, who made an offer of $4,000

an acre for the farm. Loomes reported this to defendants as an offer of $3,750 per acre. It being refused, further negotiations followed, Schaeffer finally increasing his offer to $5,000, which defendants accepted. Thereupon Loomes, on May 28, 1925, drew a contract for the sale of the entire farm to Schaeffer for this amount and signed as agent for the parties on both sides, which they ratified. The hand money, $15,000 was paid and the contract provided for final settlement on or before September 15, 1925. It was a cash sale and Loomes informed the Jones' heirs that the purchaser was a Philadelphia millionaire. In fact, Schaeffer was a resident of Delaware County and not of great wealth. Becoming acquainted with facts to which we will refer, defendants tendered a return of the hand money and refused to carry out the contract. Thereupon plaintiff filed this bill, in which and in later sworn pleadings he deliberately stated, inter alia, that he was the real purchaser in his own right and for his own profit. He made a somewhat similar statement when first called as a witness, but, later in his testimony, frankly admitted that he had no interest in the purchase, but took title as a "straw man" for the use of the Bonds and at the request of his son, who was their attorney; that they furnished the hand money and also the balance due the Jones' heirs at time of settlement; also that the pretended sale to him by the Bonds and the security given by him to them was a mere pretence. The manifest object of this sham arrangement was to give the Jones' heirs the impression that the sale was to a third party.

Loomes says he did not know until some days after the contract was drawn that the Bonds were the real purchasers. As a matter of fact he did know it, at least on that day (May 28, 1925), as the checks for the hand money came directly from the Bonds, $6,000 of which he retained as commissions, $5,250 of which he returned to the Bonds and the balance of $3,750 was in the Bonds' check which he deposited and sent in place his own

check of like amount to the Jones' heirs. Furthermore, he fixed his commission, in case the sale fell through, at what it would be on the share of the Jones' heirs.

Again Loomes had been in consultation with one of the Bonds about this farm before he undertook to sell it for the Jones's heirs and had been given encouragement by the Bonds that if they secured the farm he would be employed to resell it, as he was, almost immediately after the contract was signed. In the summer of 1925, before the controversy arose as to carrying out the contract, he sold one piece thereof for the Bonds and received a commission of $500 out of the hand payment. Moreover, he never tried to secure any customer for the farm except Schaeffer and falsely reported to his principals the first offer made by the latter. The above sketch of the facts are found more at large by the chancellor, with other facts found in addition.

The chancellor refused to decree a specific performance of the contract and recommended a dismissal of the bill. This refusal was based largely on two grounds. First, that plaintiff had deliberately sworn falsely to the pleadings filed in the case in a manner calculated to deceive the chancellor and defeat justice and was therefore not in court with clean hands. Under such circumstances, equity would not grant him relief: Comstock v. Thompson, 286 Pa. 457; Brown v. Pitcairn, 148 Pa. 387; Orne v. Kittanning Coal Co., 114 Pa. 172; and see Miller v. Fulmer, 25 Pa. Superior Ct. 106, also opinion of Judge Sulzberger, in Rice v. Findley Co., 19 Pa. Dist. 601. And, secondly, that Loomes, as an agent, had been unfaithful to his principals and had deceived them by misinformation and false statements; also concealed from them the fact that he had received encouragement from the real purchasers to the effect that he would be employed to resell the property in case of a purchase thereof by them. There is a sharp conflict in the evidence as to whether the Bonds gave Loomes such encouragement, but, under all the facts and circumstances, we are unable

to say the chancellor erred in finding that they did. Of course, as the present chancellor did not see the witnesses or hear the testimony, we would feel at liberty to reverse the finding, if convinced of error: Gilbraith's Est., 270 Pa. 288. The chancellor properly treats Loomes as being unfaithful to his principals, the vendors, at the encouragement of the vendees. If so, the vendors cannot be compelled to perform the contract. See Wilkinson v. McCullough, 196 Pa. 205; Rich v. Black & Baird et al., 173 Pa. 92; Finch v. Conrade's Executor, 154 Pa. 326; Everhart v. Searle, 71 Pa. 256; Lightcap v. Nicola, 34 Pa. Superior Ct. 189; Shamokin Mfg. Co. v. Ohio G. F. & I. Co., 39 Pa. Superior Ct. 553.

After the chancellor had filed his findings and entered a decree nisi, the two Bond brothers, Richard J. and V. Ervin, were permitted to intervene as plaintiffs and file exceptions. Their application, however, to have the case reopened and further testimony taken, was rightly refused. Schaeffer was their agent and they suffered him to file the bill in his own name and to try to secure the land for them on the theory that he was the real purchaser. The falsehood of which, being shown at the inception of the trial, the case proceeded on the basis that Schaeffer held the legal title as agent for the Bonds, the latter being in court and witnesses in their own behalf. There was no suggestion that the suit was not properly brought in the name of the agent. No advantage was taken of the fact that they were not parties of record, and no adverse conclusion was drawn against them on that ground. Hence, there was no necessity for reopening the case on their application, after decree nisi. At most such application was for the discretion of the trial court. See Berlin Smokeless C. & C. Co., 272 Pa. 24, 27. Being allowed to intervene, they have properly exercised their right to bring a separate appeal.

It may be, as the chancellor finds, that the contract was a fair one as to price, but that is not the controlling question here. Equity will not specifically enforce a

contract, whether just or unjust, if unfairly obtained (see Reynolds v. Boland, 202 Pa. 642; Henderson v. Hays, 2 W. 148), as such enforcement is a matter of grace and not of right. In Welsh et ux. v. Ford et ux., 282 Pa. 96, 99, Mr. Justice FRAZER, speaking for the court, says: "Although relief in equity is a matter of grace only and not of right, and rests in the discretion of the court, to be exercised upon a consideration of all the circumstances of the case, it does not follow that a decree for specific performance must be entered in all cases where the agreement is legally sound and the price adequate, but, if the transaction be inequitable or unjust in itself or rendered so by matters subsequently occurring, specific performance may be denied and the parties turned over to their remedy in damages." The same rule prevails elsewhere: "Specific performance is an extraordinary remedy, and will never be awarded unless the court can give the approval of its conscience to the contract presented, and it is refused whenever the contract appears to be unconscionable or inequitable": New York Brokerage v. Wharton, 143 Iowa 61, 119 N. W. 969.

Considering that the Bond brothers tried to buy the land at much less than its value and saying their sisters would sell for $3,000 an acre, and in less than two weeks their mother wrote M. L. Jones that they had decided not to buy out the Jones' heirs, when they were then planning to do so secretly through a third party, which they attempted to do at an inadequate price, that they carried out the deception by a sham sale of their own interests to the same party, and allowed him to plant the case for specific performance on the false assertion that he was a bona fide purchaser in his own right, it cannot be affirmed that the contract is one calling for specific performance whether Schaeffer or the Bonds be treated as the real plaintiffs. In equity, "the doors are shut against one, who, in his prior conduct in the very subject-matter at issue, has violated good conscience, good

faith or fair dealing": Orne v. Kittanning Coal Co., 114 Pa. 172, 182; and see Friend v. Lamb, 152 Pa. 529; Rennyson v. Rozell, 106 Pa. 407, 412; Fisher v. Worall, 5 W. 478.

The decree is affirmed and the appeals are dismissed at the costs of the respective appellants.