## Kane v. McClenachan, Appellant.

418

Argued November 18, 1931.

Before Trexler, P. J., Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

J. B. Hannum, Jr., and with him Robert B. Greer and J. Allen Hodge of Hannum, Hunter, Hannum & Hodge, for appellant.

Albert J. Williams, and with him Paul Lane Ives, for appellee.

OPINION BY STADTFELD, J., March 7, 1932:

This case is an appeal from the decree of the court of common pleas of Delaware County, ordering the defendant, E. B. McClenachan, to specifically perform an alleged agreement of sale as set forth in the Bill of Complaint, and execute and deliver to the plaintiff, "J. C. Kane, Agent," a deed for the premises described in the agreement. The agreement is dated the 25th day of February, A. D. 1925, and is on a printed form of the customary agreement of sale, in which E. B. McClenachan, defendant, is named as of the first part, and "J. C. Kane, Agent for said party of the second part," under which the party of the first part agrees to sell and convey to the said party of the second part a certain lot or piece of ground situate in the City of Chester, and the party of the second part agrees to pay therefor the sum of $1200 as follows: One hundred dollars on the signing

of the agreement, and the balance at the time of settlement.

The agreement provides that "the said party of the first part hereby agrees to pay J. C. Kane, Agent, 1½% commission on the gross consideration." It is signed by E. B. McClenachan in his own proper handwriting, and the party of the second part signs as "J. C. Kane, Agent." Endorsed on the agreement is a receipt signed by the said E. B. McClenachan, acknowledging receipt of one hundred dollars on account of the purchase money.

Defendant filed an answer and supplemental answer, denying that the agreement was an agreement of sale, and alleging it to be an agency agreement confirming a prior parol agreement of agency entered into immediately before the execution of the written agreement. He also alleged that the agreement was procured by fraud and misrepresentation on the part of the said Kane. Plaintiff filed a replication and subsequently, an Amended Bill, in which the Ford Motor Company was intervening plaintiff with the said Kane, was filed alleging that the said Kane in the procuring of the execution of the agreement was acting as agent on its behalf. To this amended bill an answer was filed similar to the answer to the original bill. A replication was filed to this answer, and the case came on for hearing before McDADE, J., sitting as Chancellor. The Chancellor found that the agreement was not an agreement of sale, but was merely an agreement of agency, and irrespective of its character, was obtained by fraud, deception and misrepresentation, and refused to decree specific performance. A decree nisi was entered, dismissing the bill, and directing plaintiff to pay the costs. Exceptions were filed by plaintiff to the findings of fact, conclusions of law and decree nisi of the Chancellor. These

exceptions were argued before the court en banc, consisting of McDADE, J. and FRONEFIELD, P. J.

FRONEFIELD, P. J., filed an opinion, sustaining plaintiff's exceptions, and recommending a decree for specific performance. NILES, J., was called in by mutual agreement, and the exceptions were re-argued, after which NILES, J., filed an opinion, concurring in the conclusion of FRONEFIELD, P. J., and recommending a decree in favor of plaintiff against the defendant, for specific performance. Thereupon, McDADE, J., filed an opinion dissenting from the recommendation of FRONEFIELD and NILES, JJ. A final decree was entered directing the defendant to perform the alleged agreement of sale as set forth in the Bill of Complaint, and to execute and deliver to J. C. Kane, Agent, a deed for the premises in question, and to pay the costs. From that decree this appeal was taken.

The Chancellor found, inter alia, that the defendant in the execution of said agreement relied upon the representation of the said Kane that the latter was to act as agent for the defendant, and, as such, was to endeavor to sell said property to a certain class of persons who he represented were buying properties in Chester, and that the price of $1200 was the best obtainable, and for the services in effecting said sale, defendant was to pay him a commission of 1½%. That plaintiff represented that his purpose in obtaining said written agreement was to confirm the amount of commission which defendant was to pay him, and to enable plaintiff to show to the prospective purchasers as his authority to sell the property.

The Chancellor further found that the representation to the defendant that the price of $1200 was the best obtainable, was an absolutely untrue and fraudulent representation made with intent to deceive the defendant, and contrary to the fiduciary relation existing between them. That at the time he obtained

the signature of defendant, plaintiff had knowledge of certain facts which materially enhanced the value of defendant's property. That he had fraudulently and falsely represented that he was acting as agent for the defendant in procuring a purchaser when he was in truth secretly acting as agent for the Ford Motor Company. That plaintiff failed to use his best endeavor and skill to promote the interests of defendant.

Great weight is to be given to those findings in cases where, as here, they depend in large degree on the credibility of witnesses whom he saw and heard, and whose testimony for that reason he is best able to weigh.

The findings by the Chancellor necessarily involve the credibility of the two witnesses, Kane, of plaintiffs, and McClenachan, defendant. He has credited the testimony of the defendant in relation to the conversation and representations which he finds induced the execution of the written agreement.

As was stated in Thorndell v. Munn, 298 Pa. 1:

"The nature of the principal differences of fact between the Chancellor and the court in banc, again compels us to call attention to the well-settled rule that though it is the duty of the latter to review carefully such of the findings of fact of the former as have been made the subject of exceptions (Worrall's Appeal, 110 Pa. 349; Miller's Estate, 279 Pa. 30; Gehringer v. Erie Railways Co., 297 Pa. 47), yet great weight is to be given to those findings in cases where, as here, they depend, in large degree, on the credibility of witnesses whom he saw and heard, and whose testimony, for that reason, he is best able to weigh: Clarkson v. Crawford, 285 Pa. 299, 303; Hall & Co. v. Lyon, Singer & Co., 286 Pa. 119; Phillips' Estate, 295 Pa. 349. As the tone and manner of a witness not infrequently indicate whether or not he is telling the truth, the rule above stated applies to findings of

fact which are inferential, as well as to those which have been expressly testified to (Robb v. Stone, 296 Pa. 482; More v. People's Bank & Trust Co., 297 Pa. 252), and is particularly applicable to cases like the present, where the knowledge and condition of the donor and the possible actual or constructive fraud of the donee are the most important matters to be determined: Hetrick's Appeal, 58 Pa. 477, 479; Plankinton's Estate, 212 Pa. 235, 237. The effect of overlooking this rule by the court in banc permeates its opinion throughout, but was particularly erroneous in so far as it resulted in greatly qualifying, if not wholly rejecting, the testimony of the only witnesses, each legally disinterested, who were present at the time the assignment of the stock was made, because one had for a long time been the secretary of the defendant, and the other, a physician, had long been his business associate and friend. These are, of course, matters to be considered when weighing their testimony, but they may be credible witnesses none the less, and often, as is the case here, are the only ones who can tell of what occurred at the vital time under consideration. In the instant case, the chancellor, who saw and heard them, said in his adjudication that they were entitled to be believed and he did believe them, and particularly commended the secretary, whom he denominated 'a fine type of witness, a very sincere and candid one, and such a one as impressed us with her sincerity, integrity and truthfulness.' "

To the same effect is the recent case of Belmont Laboratories v. Heist, 300 Pa. 542.

After a careful reading of the testimony, we find that there was sufficient evidence, if believed, to warrant the finding of the Chancellor that the execution of the agreement was obtained through fraud and misrepresentation.

In the disposition of this case, two questions necessarily arise:

(1) Was the agreement in controversy one of sale or one of agency?

(2) Was the execution of the agreement obtained through fraud and misrepresentation on the part of J. C. Kane, the agent who procured it?

The agreement is ambiguous on its face. It names E. B. McClenachan ...... of the first part, and J. C. Kane, agent for said party of the second part.

The term "agent" as used in connection with the name of plaintiff, may be applied as indicating agent for the said E. B. McClenachan, the defendant, or agent for an undisclosed principal, a proposed vendee. No second party other than Kane, is named in the instrument.

The agreement, after providing for a sale and conveyance to the party of the second part by the party of the first part, provides for the payment by the party of the second part of the consideration of $1200, and then provides that "The said party of the first part hereby agrees to pay J. C. Kane, agent, one and one-half per cent. commission on the gross consideration." The paper, in itself, is not intelligible. Each party testifies that it was intended by him to mean what it does not say, and which each understood, to mean something that it does not mean. In view of the ambiguity in the instrument and the charge of fraud in its procurement, which latter feature we will discuss infra, parol evidence was admissible, not for the purpose of contradicting or varying the instrument, but for the purpose of ascertaining the intention of the parties.

In Bubb v. Parker, 252 Pa. 26, it was said at page 29:

"One paramount rule of construction to which all others are subordinate is to ascertain the intention of the parties, and to give effect to that intention if it can be done consistently with legal principles, for the reason that the parties should be bound by what they

intended to be bound by, and no more. To this end the way is open for the admission of parol evidence; not that the written contract may be altered, varied or contradicted in its terms, but that the court may place itself in the same situation as the parties who made the contract so as to view the circumstances as they viewed them, and be better able to judge of the meaning of the language of the contract. A corollary to this rule is that in determining an indefinite or ambiguous contract the construction placed upon it by the parties themselves is to be considered, and to this end it may be shown by declarations of either party that what such party understood at the time to be the scope and purpose of the contract is at variance with the construction that such party seeks to establish when the matter becomes the subject of subsequent litigation.''

We find a somewhat analogous case in Real Estate Company v. Rudolph, 301 Pa. 502, which was a bill in equity for specific performance of an option for the purchase of certain real estate. The agreement was in form following:

"April 18, 1928.

"Real Estate Company of Pittsburgh,
  Wood and Fourth,
    Pittsburgh, Pennsylvania.

"Gentlemen:

"In consideration of One ($1.00) dollar in hand paid, I hereby give you the option to purchase my property situate 1628 Penn Ave., at the price of $15,000. This option to expire at 12 o'clock noon, April 24, 1928.

"If this option is accepted by you and transaction closed, I agree to pay you a commission of 3% on the sale price. It is understood that the property is free

and clear of encumbrances excepting a mortgage in the amount of $6,000.

Very truly yours,
J. A. Rudolph.''

In referring to that instrument, the Supreme Court, through Mr. Justice SIMPSON, said, p. 508:

''Moreover, it is quite possible, when taken in conjunction with a finding of the chancellor that defendant knew the agreement was sought because of a hoped for resale to a third party, that its true interpretation is that defendant gave to the legal plaintiff an option until '12 o'clock noon, April 24, 1928,' to find a purchaser for the property at $15,000, and said to him, 'if this option is accepted by you and transaction closed, I agree to give you a commission of three per cent on the sale price.' No other construction satisfactorily explains why the vendor agreed to pay the vendee for buying the property, instead of merely stating that the sales price is to be $14,550. If that construction is correct, then the agreement contemplated services to be rendered by plaintiff to defendant forthwith, which the former impliedly agreed to render, and hence an additional valuable consideration appears.''

If the minds of the parties did not meet, there is no contract and nothing to be enforced specifically.

Was the instrument procured through fraud or misrepresentation on the part of Kane?

Irrespective of whether the agreement should be construed as a contract of sale or one of agency, the same question arises in considering the effect of such misrepresentation in obtaining its execution.

If Kane was the agent of McClenachan, it was his duty, irrespective of any statement by him, to obtain the best price possible. If, as subsequently developed, he was from the beginning the agent for the Ford Motor Company, then his duty to the latter necessitated obtaining the property at the lowest price pos-

sible. The two positions are inconsistent with each other. No one can serve two masters at the same time. If Kane was the agent of McClenachan, then in acting at the same time for the Ford Motor Company, he was perpetrating a fraud on McClenachan.

As stated in Wilkinson v. McCullough, 196 Pa. 205, 208:

"The general principle is that out of consideration for the weakness of human nature, the law will not permit real estate brokers and others occupying fiduciary relations to place themselves in a position where they are open to the claims of conflicting duties, or to the claims of duty conflicting with self-interest. ...... In the former case (Young v. Hughes, 32 N. J. Eq. 372), it was held that a real estate broker employed to find a purchaser for land is bound to disclose to his principal any facts known to him, material to the transaction; and if he takes part in the negotiations, he is bound to exert his skill for the benefit of his principal.

. . . . . . . . . . . . . . . . . . . .

"In commenting on the relation of real estate brokers to their principals, it was said, in Rich v. Black et al., 173 Pa. 92, 99, that 'the relation which such agents bear is confidential and disarms the vigilance of their principals; it affords peculiar facilities for obtaining exclusive information in respect of the property entrusted to them for sale; their employment implies that they have superior advantages for making sales and that they will use every effort and means to obtain the highest price for the benefit of their principal.' See also Addison v. Wanamaker, 185 Pa. 536.''

The findings of the Chancellor indicating both misrepresentation and concealment, plaintiffs are not in court with clean hands, and are not entitled to specific performance.

In the case of Miller v. Fulmer, 25 Pa. Superior Ct.

106, the facts were similar to those at bar, for the vendor, in an agreement of sale, had been deceived as to the identity of the purchaser. The vendor, Miller, discovered this deception before settlement and refused to convey. He then sued for cancellation of the contract, alleging legal fraud and when the vendee filed a cross-bill asking for specific performance, defended on the grounds that he had been tricked and deceived as to the identity of the purchaser. The lower court upheld both contentions of Miller and the vendee appealed. This Court ruled that there was no legal fraud sufficient to cause the cancellation of the contract but held that a business lie will not be tolerated in a court of equity, and refused to decree specific performance on the grounds that the plaintiff in the cross-bill had been guilty of bad faith, trickery and deceit. In its opinion, the court said:

"While the falsehood employed in the transaction may be viewed in the nature of a gratis dictum, not to be taken seriously unless made a contractual stipulation; as the venial lie of commerce, and not the mortal lie of fraud in law, fatal to the contract which it infects; presenting no legal ground for avoiding the agreement of the parties; it may be considered by a court of equity where conscience and good faith may sway as the balancing cast. Therefore, while the contract here may not be impeached at law, equity affords a measure of relief from it, since it has not been executed by a conveyance. Specific performance is not of right but of grace. It does not necessarily follow that because a contract is binding at law, equity will enforce its performance. ...... Whatever may be said in a court of law of the pretenses here employed, the conduct of the defendants was marked by a degree of guile sufficient to bar the interposition of equity in furtherance of their design. The case is one in which a court of equity will not interfere either to rescind

or enforce the contract, but will leave the parties to their remedies at law."

Equity will not specifically enforce a contract, just or unjust, if unfairly obtained, as such enforcement is a matter of grace, and not of right: Schaeffer v. Jones, 293 Pa. 529.

Under no circumstances, could the final decree, directing a conveyance to "John C. Kane, Agent," be sustained. If the agreement should be construed as one of agency, then the decree would necessarily be for a conveyance to a designated purchaser obtained by the agent, and not to the agent himself.

For the reasons stated, the assignments of error must be sustained.

The final decree, sustaining the exceptions to the Chancellor's findings of fact and conclusions of law, is reversed, and said findings of fact and conclusions of law, so far as consistent with this opinion, and decree dismissing the bill, are reinstated. Costs to be paid by appellee.