## Hick, Appellant, *v.* Peoples-Pittsburgh Trust Company et al.

Argued October 29, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Allen H. Berkman,* with him *John M. Henry,* for appellant.

*Oliver K. Eaton,* with him *Jason Richardson,* for appellees.

*T. W. Pomeroy, Jr.,* with him *Reed, Smith, Shaw & McClay,* for appellee.

*R. A. Applegate,* with him *Rose & Eichenauer,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, December 2, 1940:

This is an appeal from a decree of the court below dismissing a bill in equity filed by David C. Hick, appellant, for an accounting of rents and profits from real estate of which he claims to be the owner.

On August 12, 1907, appellant, and Mary E. Hick, his wife, owned premises 210 Sandusky Street, in the City of Pittsburgh, as tenants by the entireties. Representing himself to be the sole owner and without the joinder or knowledge of his wife, appellant, on that date, executed a bond and mortgage upon the property to the Ben Franklin Insurance Company of the City of Allegheny, to secure a loan to him in the sum of $3,600. Upon the mortgagee's discovery of the estate by the entireties, appellant executed a second bond and mortgage in the same amount, forging his wife's name thereto, and the first mortgage was satisfied of record. Appellant having defaulted on the mortgage loan, the mortgagee, on February 4, 1908, entered judgment on the bond accompanying the second mortgage, and, on March 20, 1908, assigned all of its rights therein to the Allegheny Trust Company, of Pittsburgh, for a consideration of $3,705.22. Execution was issued upon the judgment, but, before the premises could be sold at sheriff's sale, Mary E. Hick filed a bill in equity against appellant, the sheriff, and the judgment creditor, to stay the sale and to have the bond, mortgage and judgment cancelled insofar as they purported to affect her rights. While her suit was pending, the Allegheny Trust Company, on April 10, 1908, purchased the premises at sheriff's sale and caused its deed to be recorded.

On June 18, 1909, a decree pro confesso was entered declaring the bond and mortgage, and the proceedings upon the judgment, null and void insofar as they pertained to Mary E. Hick. Prior to the entry of the decree appellant fled the jurisdiction and has since been residing in the state of Ohio under an assumed name. In 1919, Mrs. Hick obtained an absolute divorce from appellant and she appears to have remained in sole possession of the premises until her death on October 19, 1936. Christopher L. M. Feeney, appellant's son-in-law, became assignee of the bond and mortgage on June 23, 1937, and, on June 30, he received, from the Allegheny Trust Company, a quitclaim deed for the property.

On October 14, 1937, appellant filed the present bill, averring that he became sole owner of the property in dispute, by survivorship, upon the death of Mary E. Hick, and demanding an accounting of the Peoples-Pittsburgh Trust Company, as executor and trustee of her estate, for all rents and profits accrued before and after her decease. He joined as defendants the Allegheny Trust Company, Christopher L. M. Feeney and his wife Marion E. Feeney, and Joseph and Mary Stevenson, the present tenants of the property, who, with the Peoples-Pittsburgh Trust Company, are the appellees. After hearing on the bill and answers, preliminary objections thereto having been overruled, the chancellor filed an adjudication dismissing the bill. Appellant's exceptions to this action were likewise dismissed by final decree of the court en banc, and this appeal followed.

There is no occasion, in this proceeding, to pass upon the merits of appellant's claim to ownership of the premises in question, for, even if his title were to be conceded, it is clear that his case against these appellees would still disclose no grounds for equitable relief, as the court below very properly held.

In short, appellant's situation is this: By a forgery, in 1907, he attempted to defraud his wife and the Ben

Franklin Insurance Company. The fraud being discovered and the bond and mortgage which he had executed being cancelled as to the interest of his wife, he fled the jurisdiction. From that time until 1937 he made no demand for any share of the rents and profits which he now claims, despite the fact that his wife divorced him in 1919. He asserts his claim, for the first time, almost a year after her death, against her executor and trustee, the assignees of his own fraudulent mortgage, and the tenants of the property. He has not made, nor offered to make, full restitution of the money obtained by him through the loan which it was given to secure. He has not explained, nor offered to explain, his act of forgery or his delay in seeking to obtain that which he now asserts he was entitled to receive during the lifetime of Mary E. Hick. Nevertheless, admitting his own wrongdoing and basing his claim solely upon technicalities of the law, he has appealed to a court of equity, asking that it exert its extraordinary powers in his behalf.

Having permitted Mary E. Hick to do as she pleased with the property for a period of thirty years and having asserted no claim whatever to any rents and profits accruing therefrom until she was dead and her lips sealed, we all agree that appellant is barred, by his own laches, from now asserting any right which he might have had, under other circumstances, to demand an accounting for rents and profits accruing during her lifetime. See *McKessen v. Doyle*, 312 Pa. 591. The whole course of appellant's conduct shows that he intended his former wife to have the full use and control of the property, without any obligation to account, and he is precluded from now asserting a contrary intention. *Simmers v. Simmers*, 339 Pa. 170, 171.

In addition to laches, the whole of appellant's claim is tainted by his own fraud. Appellees are not, as he contends, "volunteer strangers", unaffected by his misconduct. The assignees of the forged mortgage stand in privity of contract with the defrauded mortgagee and

the executor represents his deceased wife whom he attempted to defraud. Nor, can it be said that his forgery of the bond and mortgage is a matter remote from the present action. See *Vercesi v. Petri*, 334 Pa. 385, 388. In support of his claims appellant relies upon a decree which was entered by the court below solely for the purpose of protecting his wife from the consequences of his forgery of her signature. His own misconduct is wholly responsible for the situation which he now seeks, by bill in equity, to remedy. Manifestly, he has not exhibited such "conscience" and "good faith" as would warrant the intervention of a court of equity. See *Cohen v. Shapiro*, 298 Pa. 27, 30; *Kinter v. Commonwealth Trust Co.*, 274 Pa. 436, 441.

Under the circumstances present in this case, and entirely without regard to appellant's conduct at the first hearing, when he fled from the courtroom and the jurisdiction before he could be called in support of his claim, and his lack of forthrightness at the adjourned hearing, which he carried to the point of attempting to deny that he had signed the bill of complaint, the court below, being a court of equity, could not have done otherwise than dismiss the bill. No other disposition of the case could be sustained. As was said in *Orne v. Kittanning Coal Co.*, 114 Pa. 172, 182: "It is one of the elementary and fundamental principles of equity, that 'he who seeks equity must do equity,' and another, that 'he who comes into equity, must come with clean hands'; the doors are shut against one, who, in his prior conduct in the very subject matter at issue, has violated good conscience, good faith or fair dealing." See also *Hoffman's Appeal*, 319 Pa. 1, 7; *Black v. Hoffman*, 312 Pa. 89, 92; *Schaeffer v. Jones*, 293 Pa. 529, 536.

Decree affirmed at appellant's cost.